IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Wilton L. Davenport, | ) | C/A No. 0:15-1906-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.).  The plaintiff, Wilton L. Davenport, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB").  Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform his past relevant work; and

(5)    whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

### ADMINISTRATIVE PROCEEDINGS

In February 2013, Davenport applied for DIB, alleging disability beginning January 4, 2013. Davenport's application was denied initially and upon reconsideration, and he requested a hearing

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



before an ALJ.  A hearing was held on August 4, 2014, at which Davenport, who was represented by Timothy Clardy, Esquire, appeared and testified.  At the hearing, Davenport amended his alleged onset date to December 30, 2013—the last day he drew unemployment.  After hearing testimony from a vocational expert, the ALJ issued a decision on November 17, 2014 finding that Davenport was not disabled.  (Tr. 19-49.)

Davenport was born in 1971 and was thirty-three years old on December 30, 2013—his amended alleged disability onset date.  (Tr. 175.)  He has a high-school education and additional training in welding and pipe fitting.  (Tr. 210.)  Davenport has past relevant work experience as a pipe welder.  (Tr. 211.)  Davenport alleged disability due bipolar disorder, depression, attention deficit disorder, back pain, neck pain, carpal tunnel syndrome, and knee pain.  (Tr. 209.)

In applying the five-step sequential process, the ALJ found that Davenport had not engaged in substantial gainful activity since December 30, 2013—his amended alleged onset date.  The ALJ also determined that Davenport's cervical spine degenerative disc disease, lumbar spine degenerative disc disease, obesity, carpal tunnel syndrome, fibromyalgia, anxiety/depression, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD") were severe impairments.  However, the ALJ found that Davenport did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ further found that Davenport retained the residual functional capacity to

> perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(b) except with the following limitations: never climb ladders, ropes, scaffolds, ramps, or stairs; occasionally balance, stoop, crouch, or kneel, but never crawl; frequent bilateral handling and fingering; work is limited to simple, routine, repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions;



and with few, if any, work place changes; with no interaction with the public and only occasional interaction with coworkers.

(Tr. 30.)  The ALJ found that Davenport was unable to perform any past relevant work, but that considering Davenport's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Davenport could perform. Therefore, the ALJ found that Davenport was not disabled from December 30, 2013 through the date of his decision.

The Appeals Council denied Davenport's request for review on March 25, 2015, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-5.)  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.



## ISSUES

Davenport raises the following issues for this judicial review:

I.      The ALJ erred by improperly rejecting ALL of the opinions of record from Claimant's treating medical sources, every one of which agree that Claimant is unable to work.

II.     The ALJ Improperly Evaluated Davenport's Pain.

III.    The ALJ erred by failing to comply with SSR 96-7p to reject the testimony of Claimant's wife regarding the severity of Claimant's symptoms and limitations.

IV.     The ALJ erred by failing to properly consider the side effects from Claimant's medications on his ability to work as required in SSR 96-7p and SSR 96-8p.

V.      The ALJ erred by ignoring the vocational expert's testimony at the hearing that there was no work that Claimant can perform upon a proper consideration of all his limitations.

(Pl.'s Br., ECF No. 18.)

## DISCUSSION

### A.    Opinion Evidence

Davenport first argues that the ALJ failed to properly evaluate the opinions from his treating physician, Dr. Melmoth Patterson, and his treating psychiatrist, Dr. Patrick Mullen. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's



opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that a finding that

a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

At issue in this case are opinions from Dr. Mullen and Dr. Patterson. With regard to Dr. Mullen, the ALJ observed the following:

In **February 2013, Patrick Mullen, M.D.**, noted, "[the claimant] is totally disabled by his mood swings" (4F/5). Additionally, in **March 2013, Patrick Mullen, M.D.**, indicated that he had seen the claimant from January to March 2013; that the treatment has been effective (claimant was at baseline, but still symptomatic).



> Improvement as expected, but condition was chronic and full remission was not
> expected.  The claimant had good compliance; was diagnosed with bipolar disorder,
> chronic anxiety/ depression, ADHD.  Mental exam was:  oriented times 4; affect was
> labile, mood was irritable; thought process was obsessive; was moderately
> distractible, had good memory; and had low average cognitive ability; resulting in
> adequate ability to complete ADLs, complete simple, routine tasks; and poor ability
> to relate to others, complete complex tasks (5F).

(Tr. 44) (emphasis and alteration in original) (citing Tr. 339-46).

In weighing the evidence, the ALJ specifically addressed the relevant factors.  He found that although the evidence was from a medically acceptable treating source, Dr. Mullen's opinion evidence was entitled to little weight.  The ALJ observed that Davenport had been receiving treatment from Dr. Mullen since January 2013 and that Dr. Mullen's handwritten treatment records contained Davenport's complaints and medication prescribed, but contained no objective mental examinations.  The ALJ further found that his opinions were not supported by the medical evidence of record.  Specifically, the ALJ observed that

> Dr. Mullen noted that the claimant's treatment had been effective; however, he also
> stated that the claimant's mood and cognitive ability were too changeable moment-
> to-moment for him to be a dependable employee.  I find that the longitudinal record
> contains no evidence or examples to support this statement.  Specifically, January
> 2014 mental exam was normal except for: "bipolar and noted difficulty with nerves
> and stress" (11F/14).  February (times 2), April 2014 mental exams were normal
> (11F/8, 10-11, 2).  March 2014 mental exam was normal (13F).  August 2014 mental
> exam was normal, except for: "verbal with some blocking and memory loss and
> difficulty with making decisions and complicated things, wife pays bills and [the
> claimant] is not working and has noted stress in marriage."  I note that these findings
> appear to be a reiteration of the claimant's subjective complaints (14F/1-2).

(Tr. 44.)  The ALJ also found that Dr. Mullen's opinions were not consistent with the record as a whole.  In support of this finding, the ALJ found that

> October 2013 notes [from Dr. Patterson] state that the claimant indicated that "the
> meds [Dr. Patterson had] him on is making him feel like a young man and so he
> needs to go back to work and needs to know if he gets a job will [Dr. Patterson] give
> him a letter stating that he can work with the meds [Dr. Patterson had] him on."  Dr.
> Patterson indicated that "he may work, if they will hire him MSP" (11F/38).  January



2014 notes show that the claimant indicated he went to a marriage retreat that weekend (11F/14). April 2014 notes show that the claimant had jury duty and could not get a job at WalMart (11F/2). Finally, Dr. Mullen's opinions are not supported or consistent with his own notes. March 2013 mental health notes show that the claimant's mood was more stable now; and he indicated that it was the best he had felt in a long time (4F/6).

(Id.)

The ALJ also addressed Dr. Patterson's opinion evidence. The ALJ stated that in August 2014, Dr. Patterson completed a Residual Functional Capacity Questionnaire form, indicating that

he had treated the claimant for 35 years; that the claimant was diagnosed with: fibromyalgia, cervalcigia, degenerative disc disease, bipolar, hypertension, low back pain, lumbar stenosis, and carpal tunnel; clinical findings included 18 trigger points and positive straight leg raise, among others; that the claimant's pain or other symptoms are severe enough to constantly interfere with attention and concentration to perform even simple work tasks; that he is incapable of even "low stress" jobs; and would miss more than 4 days per month of work; and finally indicated many other physical RFC limitations (14F).

(Tr. 45.) The ALJ again referenced the October 2013 treatment note in which Dr. Patterson stated that "the claimant indicated that 'the meds [Dr. Patterson had] him on is making him feel like a young man and so he needs to go back to work and needs to know if he gets a job will [Dr. Patterson] give him a letter stating that he can work with the meds [Dr. Patterson had] him on.' Dr. Patterson indicated that 'he may work, if they will hire him MSP' (11F/38)." (Id.) (emphasis deleted).

The ALJ observed that Dr. Patterson was a medically acceptable treating source; however, he gave Dr. Patterson's August 2014 opinion little weight and his October 2013 opinion controlling weight. With regard to the August 2014 opinion, the ALJ again addressed the applicable factors. The ALJ first observed that contrary to Dr. Patterson's statement that he had treated Davenport for thirty-five years, the earliest visit recorded in the record from this physician is March 2013, and the notes from this visit indicate that Davenport is a new patient with records coming, noting that

Davenport had been seeing Dr. Scott and then Dr. Sacsena. The ALJ acknowledged that Dr. Patterson may have treated Davenport in the remote past and further stated that "either way, [he] consider[ed] Dr. Patterson as a long-term primary care treatment provider who saw the claimant since before the amended alleged onset date." (Tr. 46.)

The ALJ found some issues with Dr. Patterson's own treatment notes that went against the supportability of his opinions. Specifically, the ALJ found that it was not clear whether the comments from Dr. Patterson's physical examinations were based on actual physical examination findings or Davenport's subjective complaints. The ALJ provides an example from a November 2013 physical exam where Dr. Patterson referenced Davenport's "difficulty with sleeping," which the ALJ stated was not an objective examination finding. The ALJ further noted "that Dr. Patterson referred to the claimant's fibromyalgia 'trigger,' not tender points, and never specified which tender points were positive." (Id.) The ALJ further found that Dr. Patterson's 2014 opinion was not supported by the medical evidence of record. With regard to Davenport's alleged physical limitations, the ALJ summarized Davenport's physical examinations from January through August 2014 as follows:

> January 2014 physical exam was normal (11F/14), February 2014 physical exam was normal: had full range of movement of all joints, had no swelling or deformity, negative straight leg raise, was able to get on and off exam table easily, ambulated down hallway without limp, had no point tenderness over spinous processes or SI joint, no increase in lumbar paraspinal muscle tone, neurologic exam was nonfocal, gait was normal, with normal tone and strength (11F/10-11). February 2014 physical exam by Dr. Patterson stated: "has been obese and has low back pain with straight leg raise on the right. Neurologic exam: nonfocal, gait normal" (11F/8). However, April 2014 physical exam was normal in this respect (11F/2). March 2014 physical exam showed: cranial nerves II through XII were grossly intact; gait was normal; lower extremities had normal motor function; straight leg raising was negative; had tenderness to palpation at L4-5 and bilateral SI area; bilateral hips had full range of motion without pain (13F). August 2014 physical exam by Dr. Patterson stated: "back pain with irradiation into the right and left legs the same and noted difficulty

with bending and unable to squat and has pain with bending and standing on right and left leg." Neurologic exam was nonfocal, gait was normal (14F/1-2).

(Tr. 46.) The ALJ continued, addressing Davenport's alleged mental limitations stating,

> January 2014 mental exam was normal except for: "bipolar and noted difficulty with nerves and stress" (11F/14). February (times 2), April 2014 mental exams were normal (11F/8, 10-11, 2). March 2014 mental exam was normal (13F). August 2014 mental exam by Dr. Patterson was normal, except for: "verbal with some blocking and memory loss and difficulty with making decisions and complicated things, wife pays bills and [the claimant] is not working and has noted stress in marriage." I note that these findings appear to be a reiteration of the claimant's subjective complaints (14F/1-2).

(Id.) Finally, the ALJ found that Dr. Patterson's 2014 opinion was not consistent with the record as a whole. In support of this finding, the ALJ stated that the opinion was not consistent with Dr. Paterson's own treatment notes (stating in October 2013 Davenport may work), with admissions made by Davenport (referencing Davenport's October 2013 statement that the medications made him feel like a young man and expressing a desire to return to work), and with Davenport's activities of daily living (referencing the marriage retreat, jury duty, and the inability to get a job at Walmart). (Tr. 47.)

In conclusion, the ALJ found that

> the longitudinal record contains no examples, evidence, or support on which to base Dr. Patterson's statements of limitations. For example, Dr. Patterson stated that the claimant would miss 4 days or more of work per month, but there was no reasoning given to support this statement. In conclusion, I give Dr. Patterson's August 2014 opinion little weight, but I give Dr. Patterson's October 2013 statement, made in his ongoing treatment relationship and not related to any disability claim, controlling weight, as it is most consistent with the longitudinal record.

(Id.)

In arguing that the ALJ erred in evaluating these opinions, Davenport generally argues that as his treating psychiatrist and physician, these doctors had unique perspectives of Davenport's symptoms and impairments and stresses their ongoing treatment relationship in support of their



opinions. Davenport further argues that giving controlling weight to an opinion by Dr. Patterson that was issued prior to the amended onset date was clear error. Davenport also argues that the ALJ erred in giving little weight to Dr. Patterson's opinion because of one alleged statement from before the alleged onset date expressing a desire to return to work. With regard to the ALJ's statement that it was unclear whether the findings in Dr. Patterson's treatment notes were findings on examination or a restatement of Davenport's subjective complaints, Davenport argues the ALJ failed to engage in further investigation to resolve this issue. Finally, Davenport argues that the treatment notes are records of treatment and are not recorded for the purpose of evaluation for a disability determination and that there is no contradictory evidence in the record.

The court has carefully considered Davenport's argument; however, the court finds that the ALJ gave appropriate reasons to discount these opinions and Davenport is essentially asking the court to reweigh the evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Contrary to Davenport's arguments, the ALJ's decision reflects that he properly considered the record as a whole, including evidence within two months of Davenport's amended onset date expressing a desire to return to work and opining that Davenport may work. See, e.g., Lackey v. Barnhart, 127 F. App'x 455, 458-59 (10th Cir. 2005) ("No authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant and, indeed, our precedent is to the contrary.") (citing Hamlin v. Barnhart, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) (holding medical reports predating disability period at issue "are nonetheless part of [the claimant's] case record, and should have been considered by the ALJ")). Morever, to the extent Davenport argues that the ALJ erred in failing to develop the record by failing to further investigate the findings in Dr. Patterson's treatment notes, the court observes that Davenport was



represented by counsel at his hearing before the ALJ.  Further, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," and Davenport has failed to demonstrate that this record is incomplete.  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994) (cited in Bell v. Charter, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. 1995)).  Davenport has failed to demonstrate how further development of the record would render the ALJ's decision unsupported.  See Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000) (requiring for a claimant to show prejudice from an ALJ's failure to develop the record, which requires demonstrating that he "could and would have adduced evidence that might have altered the result") (internal quotation marks and citations omitted).  Essentially, Davenport's argument appears to rest on the notion that the ALJ should have sought out additional objective evidence to support the opinion of Dr. Patterson, which is not contemplated by the regulations.  Furthermore, the court observed that the opinion explicitly reflects that the ALJ applied the relevant factors to the opinions at issue.

In sum, upon review of the ALJ's decision and the record, the court finds that Davenport has failed to demonstrate that the ALJ's decision to afford little weight to the opinions at issue is unsupported by substantial evidence or based on an incorrect application of the law.  See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted).  The decision reflects that the ALJ weighed these



opinions and reasonably found that the medical findings and observations in the record did not support them. Although Davenport may be able to point to select medical records that arguably support the opinions, he has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of his duties in weighing the evidence, properly relied on medical records and treatment notes in determining that the opinions were unsupported. See Craig, 76 F.3d at 589; Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). For all of these reasons, the court finds that Davenport has not shown that the ALJ's decision with regard to the opinion evidence at issue was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**B.    Credibility**

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other



symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added).  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id.  The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i)     Your daily activities;
> (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)   Precipitating and aggravating factors;
> (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ summarized Davenport's allegations as follows:

At the hearing, the claimant testified that he had:  pain in his back, neck, and legs that felt like the flu at least once per week; fibromyalgia and mental disorder; spurs in his feet; degenerative disc disease; constant pain in his back; had carpal tunnel in his hands that would go to sleep a lot and he would drop things; shoulders hurt with flare ups of fibromyalgia; had COPD and used an inhaler as needed; his biggest issue was his back pain that went down to his knees; and his feet hurt.  He stated that he stopped seeing Dr. Mullen in March 2014 because of cost; that he had problems with his temper; had panic attacks at least twice per week; had problems focusing and could not concentrate; stayed in bed up to 3 days every week or two; and was unable



to sleep.  He testified that he could stand for 30 minutes; sit for 15 to 20 minutes; walk for 20 minutes; lift 10 to 20 pounds; and could bend very slowly.

(Tr. 31.)

The ALJ found that Davenport's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible based on the record in this case.  After acknowledging that an amended alleged onset date of December 30, 2013 "renders that majority of the medical records as less relevant and probative, as they were prior to this date," (Tr. 31), the ALJ proceeded to first summarize the objective medical evidence of record at length as to each impairment.  (See Tr. 32-38.)  Acknowledging that a claimant's symptoms can suggest "a greater level of severity than can be shown by the objective evidence," the ALJ further addressed the relevant factors to consider in weighing a claimant's credibility.  The ALJ first considered Davenport's daily activities, observing that the record indicated that following the amended onset date Davenport went to a marriage retreat, had jury duty, and unsuccessfully attempted to get a job at Walmart.  The ALJ found that these activities, which were included in statements to Davenport's treatment providers and not in pursuit of his disability claim, were not limited to the extent one would expect, given his complaints of disabling symptoms and limitations and were more probative than Davenport's more limited testimony and the more limited statements from Davenport's wife.  Regarding the location, duration, frequency, and intensity of Davenport's pain and the factors that precipitate and aggravate the symptoms, the ALJ found that Davenport's examination records revealed normal physical findings which were not consistent with someone alleging totally disabling pain.  With regard to the type, dosage, effectiveness, and side effects of any medication that Davenport takes or has taken to alleviate pain or other symptoms, the ALJ first

discussed at length Davenport's history of alleged medication seeking/misuse beginning in February 2012, finding that it went to Davenport's overall credibility. The ALJ also observed that throughout the record, Davenport admitted that his medications were effective, citing records from 2013, and that Davenport reported medication side effects and got his providers to change his medications as necessary. Finally, the ALJ noted that Davenport indicated using a heating pad for back pain and a brace, and reported that physical therapy and injections were not helpful. In sum, the ALJ stated that "[n]o one inconsistency or conflict described above is dispositive. However, viewed as a whole, the identified evidence sufficiently demonstrates that the claimant's allegations lack credibility." (Tr. 42.)

Davenport first appears to argue that once he satisfied the first step of the two-step process in evaluating allegations of disabling pain or other symptoms, he was entitled to rely exclusively on subjective evidence to prove the intensity, persistence, and severity of the symptoms and that the ALJ erred by considering only the medical evidence. The court disagrees. In Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), the Fourth Circuit stated: "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day," 453 F.3d at 565; however, the Hines Court acknowledged that "[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered." Id. at 564 (quoting SSR 90-1p). Moreover, the Hines Court noted that

> [w]hile objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

Id. at 565 n.3 (quoting Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)). Davenport has failed to demonstrate that the ALJ erred in applying this law.[2]

Davenport also appears to challenge some of the reasons mentioned by the ALJ. Specifically, he appears to argue that the ALJ erred in relying on a statement made two months prior to the amended onset date indicating that his medication makes him feel like a young man, that he needs to get back to work, and inquiring whether Dr. Patterson will give him a letter stating that he can work with his current medications. Further, Davenport appears to argue that the ALJ improperly relied upon his prior history of pain medication abuse, to which Davenport alleges he admitted and sought help to wean himself off of the medications. Davenport also argues that since his amended onset date there was no indication that he was engaging in drug-seeking behavior.

Upon review of the records as a whole and the parties' briefs, the court finds that Davenport has failed to demonstrate the ALJ's determination that Davenport was not entirely credible is unsupported or controlled by an error of law. As stated above, it the ALJ's duty to weigh credibility. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

---

[2] Moreover, the court observes that the ALJ found there was objective evidence only as to *some* of the alleged symptoms.



Moreover, the ALJ's decision specifically reflects that he considered and evaluated each of the relevant factors in weighing Davenport's credibility. See 20 C.F.R. § 404.1529(c)(3). As detailed above, the ALJ thoroughly summarized Davenport's medical treatment prior to and during the relevant time period. Thus, the ALJ did not rely only on records that predate Davenport's amended onset date; in fact, the ALJ acknowledges that records predating the amended onset date are less relevant and probative, and throughout the opinion indicates whether the evidence discussed falls before or after the amended onset date of December 30, 2013. Further, upon review of the ALJ's decision and the records in this case, the court finds that Davenport has failed to demonstrate that the ALJ selectively cited records that supported his conclusions or misrepresented records. Further, even if the court were to agree with Davenport on his challenges, the court finds that Davenport has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law as these were but two issues among numerous reasons that the ALJ offered in concluding that Davenport's allegations lacked credibility. See Hines, 453 F.3d at 565 n.3 (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## C.    Lay Evidence

Davenport next argues that the ALJ erred in evaluating lay evidence from Davenport's wife. In addition to evidence from acceptable medical sources, the ALJ "may" use evidence from other non-medical sources, such as evidence from spouses, parents, and friends, to show the severity of a claimant's impairment(s) and how it affects his or her ability to work.  20 C.F.R. § 404.1513(d)(4); SSR 06-03p, 2006 WL 2329939, at *2.  "[I]nformation from [non-medical sources] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function[;]" however, in considering evidence from these sources, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."  SSR 06-03p, 2006 WL 2329939, at *2, *6.

In this case, the ALJ stated the following regarding Davenport's wife:

> In a July 2014 Third Party Function Report, the claimant's wife Hollie Davenport indicated that the claimant had constant, chronic pain, mental problems; didn't do many activities; didn't have a life because of his health problems; was very depressed; did not sleep much at night because of pain and mental issues; was able to lift 20 pounds, walk 50 feet before resting for 30 minutes; did not handle stress or changes in routine well; had panic attacks; that some days he could not get out of bed because of chronic pain and would stay in bed for up to 3 or 4 days; and his mental status was up and down.  She indicated that [h]is impairments affected his ability to: lift, squat, bend, stand, walk, sit, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use hands, and get along with others (14E).
> . . . .
>
> I give little weight to the claimant's wife Hollie Davenport's 2014 Third Party Function Report (14E), as it was consistent with the claimant's allegations, which I have found as only partly credible.  Additionally, she appears to be sympathetic to the claimant and invested in the outcome because she is the claimant's wife and has a vested interest in him obtaining disability benefits.  Furthermore, she is not a medical expert, and based her opinions on his subjective complaints, and not the objective medical evidence.

(Tr. 31, 45) (emphasis deleted).  Davenport challenges the ALJ's statements, generally arguing that Davenport's wife provided "additional clarifying information concerning Claimant's history of limitations" and "further information concerning Claimant's inability to maintain gainful employment as well as the extent of Claimant's physical and mental impairments."  Therefore, Davenport argues that the ALJ failed to properly consider the evidence from his wife.

Upon review of the evidence at issue, the court finds that Davenport has failed to demonstrate any error by the ALJ in evaluating this evidence.  The ALJ's decision reflects that he considered various applicable factors in weighing her opinion.  Moreover, contrary to Davenport's arguments, the evidence from Davenport's wife is very similar to and consistent with the evidence from Davenport.  Thus, even if the court were to agree that the ALJ erred in evaluating her opinion, any error would be harmless, because for the reasons discussed above, Davenport has failed to demonstrate any error by the ALJ in evaluating Davenport's credibility.

**D.     Remaining Issues**

Davenport separately argues that the ALJ erred in failing to properly consider the side effects from his medications and that the ALJ erred in failing to accept testimony from the vocational expert indicating there were no available jobs a claimant could perform with the limitations included in Dr. Patterson's 2014 opinion.

The ALJ's decision reflects consideration of the side effects from Davenport's medications. In evaluating Davenport's credibility, the ALJ acknowledged that Davenport's wife reported his medications made him drowsy and that Davenport reported his medications made him drowsy and gave him memory loss.  However, the ALJ also found that Davenport "has gotten his treatment providers to change his medications as necessary."  (Tr. 42.)  Further, the ALJ found that Davenport's testimony and reports from his wife lacked credibility.  Thus, the court finds that



Davenport has failed to demonstrate any error by the ALJ with regard to any alleged side effects. With regard to the testimony from the vocational expert, as discussed above, Davenport has failed to demonstrate any error by the ALJ in discounting Dr. Patterson's 2014 opinion. Thus Davenport cannot show any error by the ALJ in failing to credit testimony from the vocational expert based on limitations that the ALJ found were not supported by the record.

## RECOMMENDATION

For the foregoing reasons, the court finds that Davenport has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

June 15, 2016
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).